**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UMB BANK, NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE OF THE $17,280,000 PHILADELPHIA AUTHORITY FOR INDUSTRIAL DEVELOPMENT REVENUE BONDS (INTERNATIONAL APARTMENTS AT TEMPLE UNIVERSITY),** | **CIVIL ACTION** **NO: _____** |
| *Plaintiff,* | |
| **v.** | |
| **BEECH INTERNATIONAL, LLC,** | |
| *Defendant.* | |

**COMPLAINT**

Plaintiff UMB Bank, National Association, as successor trustee (the "Trustee") of the $17,280,000 Philadelphia Authority for Industrial Development Revenue Bonds (International Apartments at Temple University) Series 2010 (the "Bonds"), for its complaint against Defendant Beech International, LLC (the "Borrower" or the "Defendant"), submits this Complaint and averments.

**PARTIES, JURISDICTION AND VENUE**

1.      The Trustee is a national banking association with its main corporate trust office located in Minneapolis, Minnesota and its principal place of business located in Kansas City, Missouri. The Trustee brings this action not in its individual capacity, but solely as Trustee for the benefit of the holders of the Bonds.

2.      Defendant is a Pennsylvania limited liability company, and its sole member is Beech Interplex, Inc., a Pennsylvania nonprofit corporation with its principal place of business located at 1510 Cecil B. Moore Avenue, Suite 300, Philadelphia, PA 19121.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the action is between citizens of different states.

4.      Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and(b)(2) because Defendant resides in this judicial district and the real property that is the subject of this action is situated in this district.

## FACTS

**A.      The Loan Transaction.**

5.      The Trustee is the successor trustee under a Trust Indenture dated as of September 1, 2010 (the "Indenture"), by and between the Pennsylvania Authority for Industrial Development ("PAID") and TD Bank, N.A., as prior trustee (the "Prior Trustee"). A true and correct copy of the Indenture is attached as **Exhibit A**.[1]

6.      Under the Pennsylvania Economic Development Financing Law, 73 Pa. Cons. Stat. § 371 et seq., as amended, PAID is authorized to issue revenue bonds and to use the proceeds from the sale thereof to make loans to finance the acquisition, rehabilitation, and equipping of housing facilities which are intended to promote the creation or retention of employment, the stimulation of economic activity, and the promotion of improvements in the health, safety and welfare of persons in the Commonwealth of Pennsylvania.

7.      As authorized by the Act and pursuant to the Indenture, PAID issued certain Revenue Bonds (International Apartments at Temple University) Series 2010A, 2010B and 2010C,

---

[1] All capitalized terms and words not otherwise defined in this Complaint shall have the meaning given to them in the Indenture and Loan Agreement.

in the aggregate principal amount of $17,280,000.00 to obtain funds to loan to Defendant to acquire, construct, equip and install student housing facilities and facilities related thereto and a retail complex adjacent to Temple University – Of The Commonwealth System of Higher Education (the "University") consisting of approximately 106 housing units containing approximately 202 beds located at 1520-38 Cecil B. Moore Avenue in Philadelphia, Pennsylvania (collectively, the "Facility").

8.    On or about September 1, 2010, PAID loaned the proceeds of the Bonds to Defendant in the original principal amount of $17,280,000.00 (the "Loan").

9.    The Loan is evidenced by, among other things, a Loan Agreement by and among PAID and Defendant dated as of September 1, 2010 (the "Loan Agreement"), pursuant to which Defendant covenanted to make Loan Payments, Additional Loan Payments and certain other amounts payable by Defendant thereunder, and to adhere to certain other requirements and covenants during the term of the loan. A true and correct copy of the Loan Agreement is attached as **Exhibit B**.

10.    To evidence such payment obligations and as additional security for the payment of the principal amount of and interest on the Bonds, Defendant delivered to the Prior Trustee, as assignee of PAID, (i) a promissory note dated September 8, 2010 in the amount of $15,985,000, (ii) a promissory note dated September 8, 2010 in the amount of $1,000,000, and (iii) a promissory note dated September 8, 2010 in the amount of $295,000 (collectively, the "Notes"). A true and correct copy of the Notes, which correspond respectively to the 2010A, 2010B, and 2010C series of the Bonds, is attached hereto as **Exhibit C**.

11.    To secure its obligations under the Loan Agreement and the Notes, Defendant, as mortgagor, entered into an Open-End Mortgage and Assignment of Leases, Security Agreement

and Fixture Filing dated as of September 1, 2010 (the "Mortgage") in favor of the Prior Trustee, as mortgagee, encumbering the Facility and all real property interests, improvements, fixtures and personal property of the Borrower located at the Facility and specified therein (collectively, the "Encumbered Property"). A true and correct copy of the Mortgage is attached hereto as **Exhibit D**. The Mortgage was recorded on September 9, 2010 in the Department of Records of the City of Philadelphia, Pennsylvania as Document No. 52256706.

12.     To further secure its obligations under the Loan Agreement and the Notes, Defendant entered a Collateral Assignment of Agreements dated as of September 1, 2010 (the "Collateral Assignment") in favor of the Prior Trustee, assigning its rights, title, and interest in and to the Additional Collateral specified therein and all rights and benefits therefrom. A true and correct copy of the Collateral Assignment is attached hereto as **Exhibit E**. The Collateral Assignment was recorded on September 9, 2010 in the Department of Records of the City of Philadelphia, Pennsylvania as Document No. 52256707.

13.     The Bonds are additionally secured by the receipt of grant payments from the Commonwealth's Redevelopment Assistance Capital Program deposited into the RACP Account of the Project Fund.  The Trust Estate, the Encumbered Property and all other property securing repayment of the Bonds is hereafter referred to collectively as the "Collateral."

14.     The Indenture, the Loan Agreement, the Mortgage, and various other documents executed by Defendant in favor of PAID and the Trustee with respect to the Loan are collectively referred to herein as the "Bond Documents."

15.     The holders of more than 50% in principal amount of each series of the Bonds (the "Majority Holders") sent their Instrument of Approval, Appointment and Acceptance, dated December 5, 2023 (the "Notice of Removal"), which, pursuant to Section 1007 of the Indenture,

removed the Prior Trustee as Trustee, paying Agent and registrar of the Bonds and, pursuant to Section 1008 of the Indenture, the Majority Holders also appointed UMB Bank, N.A. as successor Trustee and registrar of the Bonds.

16.     By its signature to a Notice of Acceptance dated May 21, 2024, and to the Notice of Removal, and pursuant to Section 1009 of the Indenture, Trustee affirmed that the Indenture remains in full force and effect in accordance with its terms. Trustee averred that it accepted the enumerated appointments and concomitant duties and that it meets or exceeds all requirements for a successor trustee imposed by the Indenture.

17.     Trustee further averred that the acceptance of successor Trustee, Payment Agent and registrar of the Bonds runs from May 21, 2024. The effective date of the appointment of UMB as the successor Trustee, Payment Agent and registrar of the Bonds is the date of the delivery of the fully executed Notice of Removal and the Notice of Acceptance to the Issuer and the Prior Trustee.

18.     Pursuant to Section 1009 of the Indenture, upon acceptance of its appointment, the Trustee became "fully vested with all the estates, properties, rights, powers, trusts, remedies, immunities, privileges, duties, and obligations" of the Prior Trustee, including all rights conferred by the Mortgage and the Collateral Assignment.

19.     Effective as of May 21, 2024, Prior Trustee assigned the Mortgage to the Trustee by Assignment of Mortgage, which was recorded with the Recorder on October 9, 2024, as Document Number 54350492.

**B.     Defendant Defaults under the Bond Documents.**

20.     Defendant is in default under the Loan Agreement, the Indenture, and the Mortgage due to its failure to comply with numerous provisions of the Bond Documents, as set forth further below.

     *i.*       ***Payment Defaults under the Loan Agreement.***

21.     Section 5.02 of the Loan Agreement requires Defendant to deposit, on a weekly basis, all Gross Revenues received by or on behalf of Defendant for redeposit into the Revenue Fund.

22.     Since at least May 21, 2024, Defendant has failed to remit Gross Revenues for redeposit into the Revenue Fund, in violation of Section 5.02 of the Loan Agreement.

23.     Defendant failed to pay the June 17, 2024 interest payment in the amount of $400,875 on the Bonds, in violation of Section 5.02 of the Loan Agreement.

24.     Defendant failed to pay the June 17, 2024 principal payment in the amount of $375,000 on the Bonds, in violation of Section 5.02 of the Loan Agreement.

25.     Section 6.03 of the Loan Agreement requires Defendant to pay, when due, all taxes and governmental charges lawfully assessed or levied against the Project.

26.     Section 9.02 of the Loan Agreement requires Defendant to not permit any part of the Project, Project Site, or Gross Revenue to become subject to any lien.

27.     Defendant failed to pay real estate taxes for the year 2018 in the amount of $62,143.78 to the City of Philadelphia, in violation of Sections 6.03 and 9.02 of the Loan Agreement. As a result, in March 2019, the City of Philadelphia filed a municipal claim/lien against Defendant and against the real property located at 1520 Cecil B Moore Ave for the unpaid real estate taxes. As of August 30, 2024, the municipal claim/lien remained active.

28.     Defendant failed to pay real estate taxes for the year 2022 in the amount of $290,177.50 to the City of Philadelphia, in violation of Sections 6.03 and 9.02 of the Loan Agreement. As a result, in January 2023, the City of Philadelphia filed a municipal claim/lien against Defendant and against the real property located at 1520 Cecil B Moore Ave for the unpaid

real estate taxes, which includes interest in the amount of 9% per annum among other fees and penalties. As of August 30, 2024, the municipal claim/lien remained active.

29.     Defendant failed to pay real estate taxes for the year 2023 in the amount of $249,118.98 to the City of Philadelphia, in violation of Sections 6.03 and 9.02 of the Loan Agreement. As a result, in April 2024, the City of Philadelphia filed a municipal claim/lien against Defendant and against the real property located at 1520 Cecil B Moore Ave for the unpaid real estate taxes, which includes interest in the amount of 9% per annum among other fees and penalties. As of August 30, 2024, the municipal claim/lien remained active.

30.     As of October 4, 2024, the Defendant owes a total amount of $1,081,428.16 in unpaid real estate taxes, interest, and penalties to the City of Philadelphia.

31.     Defendant failed to disclose the City of Philadelphia's municipal claims/liens to Trustee.

### ii.      *Other Covenant Defaults under the Loan Agreement.*

32.     Section 8.08 of the Loan Agreement requires Defendant, within 120 days after the end of each Fiscal Year, to deliver the basic financial statements of Defendant prepared by Defendant's Accountant, including the balance sheet, income (loss) statement, and the statement of cash flows of Defendant for the Fiscal Year then ended, which basic financial statements accompanied by an Audited Report.

33.     Section 8.08 of the Loan Agreement further requires to annual audited financial statements to be accompanied by a certificate of the Defendant to the effect that the Defendant is not in default under any provision of the Loan Agreement and has fully complied with all the provisions therein, or if the Defendant is in default or has failed to comply, setting forth the nature of the default or failure to comply.

34.     Defendant failed to deliver the basic financial statements and Audited Report of the Defendant for the Fiscal Year ending on July 31, 2021, by November 28, 2021, in violation of Section 8.08 of the Loan Agreement.

35.     In November 2022, Defendant belatedly delivered the basic financial statements and Audited Report of the Defendant for the Fiscal Years ending on July 31, 2020 and 2021. In the statements and report, Defendant failed to disclose its outstanding real estate taxes for the year 2018 and the corresponding municipal claim/lien filed by the City of Philadelphia.

36.     Defendant failed to deliver the basic financial statements and Audited Report of the Defendant for the Fiscal Year ending on July 31, 2022, by November 28, 2022, in violation of Section 8.08 of the Loan Agreement.

37.     Defendant failed to deliver the basic financial statements and Audited Report of the Defendant for the Fiscal Year ending on July 31, 2023, by November 28, 2023, in violation of Section 8.08 of the Loan Agreement.

38.     For the Fiscal Years ending on July 31, 2021, 2022, and 2023, Defendant failed to deliver a certificate that Defendant was not in default under the Loan Agreement and had fully complied with the Loan Agreement or, if in default or had failed to so comply, set forth the nature of the default or failure to comply, in violation of Section 8.08 of the Loan Agreement.

39.     Specifically, Defendant failed to deliver a certificate that Defendant was in default under the Loan Agreement and had failed to comply with the Loan Agreement regarding its failure to pay real estate taxes for the years 2018, 2022, and 2023, and the corresponding municipal claims/liens, as detailed above.

40.     In a letter dated September 1, 2020, Defendant falsely represented to Trustee that Defendant was not in default under any provision of the Loan Agreement.

41.     Section 8.08 of the Loan Agreement requires Defendant, within 45 days after the end of each fiscal quarter, to deliver the internal income (loss) statement and the statement of cash flows of Defendant for such fiscal quarter, together with a current rent roll and statistics showing the occupancy and demand levels, among other information.

42.     On information and belief, Defendant failed to deliver the internal income (loss) statement and the statement of cash flows, among other information, for the fourth quarter of the Fiscal Year ending on July 31, 2019, in violation of § 8.08 of the Loan Agreement.

43.      On information and belief, Defendant failed to deliver the internal income (loss) statement and the statement of cash flows, among other information, for all fiscal quarters of the Fiscal Year ending on July 31 of 2020, in violation of Section 8.08 of the Loan Agreement.

44.     On information and belief, Defendant failed to deliver the internal income (loss) statement and the statement of cash flows, among other information, for all fiscal quarters of the Fiscal Year ending on July 31 of 2021, in violation of Section 8.08 of the Loan Agreement.

45.     On information and belief, Defendant failed to deliver the internal income (loss) statement and the statement of cash flows, among other information, for all fiscal quarters of the Fiscal Year ending on July 31 of 2022, in violation of Section 8.08 of the Loan Agreement.

46.     On information and belief, Defendant failed to deliver the internal income (loss) statement and the statement of cash flows, among other information, for all fiscal quarters of the Fiscal Year ending on July 31 of 2023, in violation of Section 8.08 of the Loan Agreement.

47.      On information and belief, Defendant failed to deliver the internal income (loss) statement and the statement of cash flows, among other information, for all fiscal quarters of the Fiscal Year ending on July 31 of 2024, in violation of Section 8.08 of the Loan Agreement.

48.     Section 8.16 of the Loan Agreement requires Defendant, within 90 days before the first day of each Fiscal Year, to deliver a copy of a Budget of anticipated Gross Revenues and Operating Expenses for the succeeding Fiscal Year.

49.     On information and belief, Defendant failed to deliver a copy of the Budget for the Fiscal Year ending on July 31, 2025, by May 3, 2024, in violation of Section 8.16 of the Loan Agreement.

50.     Section 8.08 of the Loan Agreement requires Defendant to certify its Fixed Charges Coverage Ratio within 120 days after the end of each Fiscal Year as part of its annual audited financial statements.

51.     On information and belief, Defendant failed to certify its Debt Service Coverage Ratio for the Fiscal Year ending on July 31, 2023, in violation of § 0.08 of the Loan Agreement.

52.     Section 8.16 of the Loan Agreement requires Defendant to budget for and maintain a Fixed Charges Coverage Ratio of no less than 1.20.

53.     On information and belief, Defendant failed to maintain the Fixed Charges Coverage Ratio for Fiscal Year ending on July 31, 2024, in violation of § 8.16 of the Loan Agreement.

54.     Section 8.16 of the Loan Agreement requires Defendant, in the event that it fails to maintain the Fixed Charges Coverage Ratio of not less than 1.20 for a Fiscal Year as certified in accordance with Section 8.08 of the Loan Agreement, to engage a Financial Consultant to conduct an investigation of the Project and to make recommendations to Defendant on remedies to achieve the required Fixed Charges Coverage Ratio.

55.     On information and belief, Defendant failed to engage a Financial Consultant, in violation of Section 8.16 of the Loan Agreement.

56.     Under Section 10.01(e) of the Loan Agreement, the occurrence and continuance of an "Event of Default" under the Mortgage, Indenture, or other Bond Documents is an Event of Default under the Loan Agreement.

57.     On or about October 7, 2024, the Trustee provided notice to Defendant of defaults and events of default under Sections 5.02, 6.03, 8.08, and 8.16 of the Loan Agreement. A true and correct copy of the October 7, 2024 notice is attached hereto as **Exhibit F.**

iii.     ***Defaults under the Indenture.***

58.     Under Section 901(c) of the Indenture, the occurrence of an "Event of Default" under the Loan Agreement or Mortgage each independently constitute an Event of Default under the Indenture.

59.     As detailed above, Defendant has defaulted under multiple provisions of the Loan Agreement.

60.     For example, since at least May 21, 2024, Defendant has failed to remit Gross Revenues for redeposit into the Revenue Fund, which is an Event of Default under Section 901(a) of the Indenture.

61.     Defendant failed to pay the June 17, 2024 interest payment in the amount of $400,875 on the Bonds, which is an Event of Default under Section 901(a) of the Indenture.

62.     Defendant failed to pay the June 17, 2024 principal payment in the amount of $375,000 on the Bonds, which is an Event of Default under Section 901(b) of the Indenture.

iv.     ***Defaults under the Mortgage.***

63.     Section 4.3 of the Mortgage requires Defendant pay, when due and payable and before interest or penalties are due thereon, all taxes owing by Defendant to any Governmental Authorities.

64.     As detailed above, Defendant failed to pay real estate taxes for the years 2018, 2022, and 2023 to the City of Philadelphia, in violation of Section 4.3 of the Mortgage. As a result, the City of Philadelphia filed municipal claims/liens against Defendant and against the real property located at 1520 Cecil B Moore Ave.

65.     Under Section 6.2(a) of the Mortgage, the occurrence of an event of default under the Loan Agreement and Indenture each independently constitute a default under the Mortgage.

66.     As detailed above, Defendant has defaulted under multiple provisions of the Loan Agreement.

**C.     The Trustee's Damages and Remedies.**

67.     As of October 1, 2024, the amount due and owing by Defendant under the Loan Agreement and Mortgage is as follows: (i) Series 2010A – principal of $14,400,000.00; and (ii) Series 2010A – interest of $636,945.83, for a total of **$15,036,945.83**, plus accrued interest at $2,227.08 per diem thereafter, together with fees, charges and costs recoverable under the Bond Documents, without defense, deduction, offset, recoupment, or counterclaim.

68.     Under § 6.3 of the Mortgage, upon occurrence and continuance of an Event of Default, the Trustee is empowered to (1) accelerate the debt (including interest at the Default Rate), (2) institute a foreclosure action against the Mortgaged Property, and (3) seek specific performance of any provision contained in the Mortgage or any of the Bond Documents, and (4) obtain a judgment for the Obligations.

69.     Under § 6.4 of the Mortgage, upon occurrence and continuance of an Event of Default and without notice, the Trustee is empowered to enter upon the Mortgaged Property and collect all Income, and after deducting all costs of collection and administration expense, apply the new Income to any of the Obligations in such order and amounts as Trustee in its sole discretion may determine.

70.     Under § 6.5 of the Mortgage, upon occurrence and continuance of an Event of Default, the Trustee is empowered to take possession and control of the Mortgaged Property to the exclusion of Defendant and all others excepting only those claiming under Permitted Encumbrances.

71.     Under § 6.6 of the Mortgage, upon occurrence and continuance of an Event of Default, the Trustee is empowered to (1) take possession of any portion of the Mortgaged Property constituting fixtures or other personal property subject to the UCC, and any record pertaining thereto, (2) use, operate, manage, lease or otherwise control such Mortgaged Property in any lawful manner, and (3) upon ten days prior written notice to Defendant, sell, lease or otherwise dispose of all or any of such Mortgaged Property at public or private sale.

72.     Under § 6.7 of the Mortgage, upon occurrence and continuance of an Event of Default, the Trustee "may, without notice, obtain appointment of a receiver for the Mortgaged Property without regard to the adequacy of any security for the Obligations."

73.     With this action, Trustee is undertaking, without limitation, to exercise additional remedies available upon an Event of Default by Defendants, including to foreclose the Mortgage and to recover all Gross Revenues that Defendant has failed to pay the Trustee as required under the Bond Documents; amounts necessary to pay all utilities, repairs, and maintenance; and lost revenue.

## COUNT ONE – MORTGAGE FORECLOSURE

74.     The preceding paragraphs of this Complaint are incorporated herein by reference.

75.     Defendant executed the Loan Agreement, which is secured by the Mortgage, in favor of the Trustee.

76.     Defendant has defaulted on its obligations under the Mortgage, the Loan Agreement, and the other Bond Documents.

77.    The Trustee is authorized by the Mortgage and by Pennsylvania law to foreclose the Mortgage in the event of a defaults by Defendant.

78.    As of October 1, 2024, there is due and owing on the Loan the sum **$15,036,945.83**, together with accruing interest and fees, charges and costs recoverable under the Bond Documents.

## COUNT TWO – BREACH OF CONTRACT

79.    The preceding paragraphs of this Complaint are incorporated herein by reference.

80.    Defendant is a party to certain contracts comprising the Bond Documents, including the Loan Agreement and the Mortgage.

81.    Defendant has breached the Bond Documents, including the Loan Agreement and Mortgage, by, among other things:

    a.    Failing to pay real estate taxes for the years 2018, 2022, and 2023 to the City of Philadelphia, in violation of Sections 6.03 and 9.02 of the Loan Agreement.

    b.    Failing to pay the June 17, 2024 interest payment in the amount of $400,875 on the Bonds in violation of Section 901(a) of the Indenture;

    c.    Failing to pay the June 17, 2024 principal payment in the amount of $375,000 on the Bonds in violation of Section 901(b) of the Indenture;

    d.    Failing to deposit all Gross Revenues into the Revenue Fund, in violation of Section 5.02 of the Loan Agreement;

    e.    Failing to deliver the basic financial statements and Audited Report of the Defendant for the Fiscal Year ending on July 31, 2021, by November 28, 2021, in violation of Section 8.08 of the Loan Agreement;

    f.    Failing to deliver the basic financial statements and Audited Report of the Defendant for the Fiscal Year ending on July 31, 2022, by November 28, 2022, in violation of Section 8.08 of the Loan Agreement;

g.   Failing to deliver the basic financial statements and Audited Report of the Defendant for the Fiscal Year ending on July 31, 2023, by November 28, 2023, in violation of Section 8.08 of the Loan Agreement;

h.   Failing to deliver the internal income (loss) statement and the statement of cash flows, among other information, for the fourth quarter of the Fiscal Year ending on July 31, 2019 and for all fiscal quarters of the Fiscal Years ending on July 31 of 2020, 2021, 2022, 2023 and 2024, in violation of Section 8.08 of the Loan Agreement;

i.   Failing to deliver a copy of a Budget of anticipated Gross Revenues and Operating Expenses for the Fiscal Year ending on July 31, 2025, by May 3, 2024, in violation of Section 8.16 of the Loan Agreement;

j.   Failing to maintain a Fixed Charges Coverage Ratio of not less than 1.20 for the Fiscal Year ending on July 31, 2024, in violation of Section 8.16 of the Loan Agreement;

k.   Failing to engage a Financial Consultant as required under Section 8.16 of the Loan Agreement; and

82.   The Trustee has been damages by Defendant's actions in an amount in excess of **$15,036,945.83**.

83.   The Trustee's damages include, but are not limited to, principal and accrued interest on the Bonds and Gross Revenues that Defendant failed to deposit with Trustee as required under the Bond Bonds.

84.   The Trustee is entitled to judgment against Defendant in an amount to be determined at trial in excess of **$15,036,945.83**, plus additional interest, attorneys' fees and costs

as allowed by law, and specific performance of Defendant's obligations under the Bond Documents.

## COUNT THREE – FRAUDULENT MISREPRESENTATION

85.    The preceding paragraphs of this Complaint are incorporated herein by reference.

86.    As explained herein, Defendant has a duty to pay, when due, all taxes assessed or levied against the Project and a duty to inform the Trustee that it is in default under the Loan Agreement and has failed to comply with the Loan Agreement.

87.    Defendant made false representations and omissions of material facts with the intention to fraudulently mislead and induce the Trustee to not exercise its rights under the Bond Documents.

88.    These fraudulent misrepresentations and omissions, which concealed the truth about the Project from the Trustee, concealed that:

    a.    Defendant has over $1 million in unpaid real estate taxes, interest, and penalties owed to the City of Philadelphia, with interest and penalties continuing to accrue; and

    b.    The City of Philadelphia has filed three municipal claims/liens against Defendant and the Project.

89.    Defendant's fraudulent misrepresentation and omissions include but are not limited to:

    a.    In a letter dated September 1, 2020, Defendant falsely represented to Trustee that Defendant was not in default under any provision of the Loan Agreement, when Defendant knew or consciously disregarded that it had unpaid real estate taxes owed to the City of Philadelphia and that the City has filed a municipal claim/lien against it and the Project for unpaid real estate taxes for the year 2018;

b.  In November 2022, Defendant belatedly provided Trustee with basic financial statements and an Audited Report of the Defendant for the Fiscal Years ending on July 31, 2020 and 2021 that failed to disclose its outstanding real estate taxes for the year 2018 and the corresponding municipal claim/lien filed by the City of Philadelphia;

c.  As described herein, Defendant has failed to deliver basic financial statements and Audited Reports for the Fiscal Years ending on July 31, 2022, 2023, and 2024, further concealing the truth of the unpaid real estate taxes and the corresponding municipal claims/liens filed by the City of Philadelphia; and

d.  As described herein, Defendant has failed to deliver a certificate of compliance with the Loan Agreement for the Fiscal Years ending on July 31, 2021, 2022, 2023, and 2024, further concealing the truth of the unpaid real estate taxes and the corresponding municipal claims/liens filed by the City of Philadelphia.

90.  At the time Defendant made the fraudulent representations and omissions, Defendant knew they were untrue or consciously disregarded its truth or falsity.

91.  Defendant intended that the Trustee, in reliance on Defendant's non-disclosure and omissions, not declare a default or otherwise exercise its rights under the Bond Documents, thus inducing the Trustee's inaction.

92.  At the time Defendant made the fraudulent representations and omissions, the Trustee was not aware of their falsity and justifiably relied upon these fraudulent statements and omissions by, among other things, not exercising its rights under the Bond Documents.

93.     Under Pennsylvania law, municipal tax liens have priority and must be fully paid and satisfied out of the proceeds of any sale of the property before any mortgage, obligation, judgment, or lien, except for the costs of the sale and proceeding.

94.     As a direct and proximate result of Defendant's fraudulent representations and omissions, the Trustee and Bondholders have been damaged by, among other things, the diminution in value of the Project by the amount of unpaid taxes, interest, and penalties in excess of **$1,081,428.16**.

### COUNT FOUR – ACCOUNTING

95.     The preceding paragraphs of this Complaint are incorporated herein by reference.

96.     The Loan Agreement is a valid contract between the Parties.

97.     Defendant was provided certain monies under the Loan Agreement, which obligate Defendant to account for those monies to the Trustee.

98.     Specifically, pursuant to the Loan Agreement, Defendant is required to provide the Trustee, among other things, annual audited financial statements and a Budget of anticipated Gross Revenues and Operating Expenses.

99.     Defendant also is required under the Loan Agreement deposit all Gross Revenues with the Trustee upon receipt by Defendant.

100.    Defendant, among other things, has failed to provide such depositions and information as would enable the Trustee to verify that Gross Revenues are being applied as contractually required and in the best interests of the holders of the Bonds.

101.    A duty to account was imposed on Defendant, and Defendant has failed to account for monies it received, which failure has rendered the Trustee unable to state the exact amount due and owing.

102.    Defendant has breached the Loan Agreement.

103.    Therefore, the Trustee is entitled to an accounting of Defendant's operations and to access all of Defendant's books, records, and financial statements.

**WHEREFORE**, the Trustee asks that a judgment be entered in its favor as follows:

(1)    Against Defendant for foreclosure of the Mortgage and in the amount of **$15,036,945.83**, together with additional accrued and accruing interest, fees, charges and costs recoverable under the Bond Documents;

(2)    Finding Defendant fraudulently misrepresented and/or omitted its failure to pay real estate taxes to the City of Philadelphia and incurred interest, penalties, and liens as a result;

(3)    Against Defendant for the amount of all unpaid real estate taxes, interest, and penalties in excess of **$1,081,428.16** that Defendant owes to the City of Philadelphia in relation to the Project;

(4)    Against Defendant, requiring specific performance of all terms and covenants in the Loan Agreement, Notes, and other Bond Documents;

(5)    For the appointment of a receiver to take control of all operations of Defendant in a manner that is in the best interests of the holders of the Bonds;

(6)    Against Defendant for all Gross Revenues not previously paid to the Trustee pursuant to the Bond Documents;

(7)    Against Defendant for an accounting;

(8)    For an award of the Trustee's costs, expenses, and attorneys' fees in accordance with the Loan Agreement and other applicable law; and

(9)    For such other and further relief as the Court in its discretion may deem equitable and just.

Dated: October 18, 2024                    Respectfully Submitted,


                                           */s/ Raymond A. Quaglia*
                                           Raymond A. Quaglia, PA ID No. 63146
                                           BALLARD SPAHR LLP
                                           1735 Market Street, 51st Floor
                                           Philadelphia, PA 19103
                                           (215) 665-8500
                                           quaglia@ballardspahr.com

                                           William P. Wassweiler (*pro hac vice forthcoming*)
                                           Karla M. Vehrs (*pro hac vice forthcoming*)
                                           BALLARD SPAHR LLP
                                           2000 IDS Center
                                           80 South 8th Street
                                           Minneapolis, MN 55402-2119
                                           (612) 371-3211
                                           vehrsk@ballardspahr.com


                                           *Counsel for Plaintiff UMB Bank, National
                                           Association, as Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed electronically on October 18, 2024. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: October 18, 2024

*/s/ Raymond A. Quaglia*
Raymond A. Quaglia
*Counsel for Plaintiff UMB Bank, National Association*